UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAVID JOHN THORKELSON, as
Personal Representative of the Estate of
Debi Lyn Thorkelson

       Plaintiff,

v.                           Case No.:  2:19-cv-263-FtM-38MRM

CARMINE MARCENO and ROBERT
CASALE,

       Defendants.
_____/

**OPINION AND ORDER**[1]

Before the Court are Defendants Carmine Marceno and Robert Casale's Motion for Summary Judgment (Doc. 60) and Plaintiff's response (Doc. 66).

**Background**

On August 31, 2017, Captain Robert Casale of the Lee County Sheriff's Office shot and killed Debi Lynn Thorkelson.  Thorkelson's estate, through its personal representative David Thorkelson, sued Casale and Sheriff Carmine Marceno for battery causing wrongful death, excessive force under 42 U.S.C. § 1983, and negligence.

The parties generally do not dispute the facts leading up to the shooting.  In the late afternoon of August 31, 2017, Thorkelson called 911 from her apartment at 431 Lazy Way, Fort Myers Beach—a two story building with four units—and hung up.  Deputy Matthew Woodby arrived to investigate.  Woodby announced his presence and knocked

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees.  By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them.  The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

on each door, but no one answered.  Thorkelson called 911 again and said, "Yea, please send police I'm in very, very danger."  When the operator asked for her address, Thorkelson said, "I don't know.  Are you fucking kidding me?  Fuck you.  Fuck you." (Doc. 60 at 5; Doc. 60-7).

Meanwhile, Woodby encountered a neighbor.  After a brief exchange about the 911 call, the neighbor said, "She's got a gun, she's got a gun."  Woodby retreated behind his car and called for backup.  He could see that Thorkelson was on a second-story screened porch with something in her hands, but a curtain obstructed his view.  Woodby asked Thorkelson to put her hands on the screen so he could confirm if she was armed. After not initially responding, Thorkelson said, "You're going to have to kill me or I'm going to kill you mother f-er." (Doc. 60 at 6; Doc. 60-9 at 4).  Woodby also heard a clicking noise coming from the porch, which he believed was Thorkelson dry firing a gun.

Other officers began arriving at the scene, including Deputy Colt Masters and Sergeant Paul Nader.  From their position at Woodby's vehicle, they too could see Thorkelson pacing around her porch, coming in and out of sight from behind the curtain, and holding something that resembled a gun, but they could not see her clearly.  Nader asked Thorkelson what she had in her hand, and she said, "I have a gun." (Doc. 60-13 at 3).  After directing several deputies to establish a perimeter, Nader retrieved a scoped sniper rifle and returned to Woodby's car.  Thorkelson withdrew into her apartment and closed the blinds.

The officers at Woodby's vehicle continued attempts to communicate with Thorkelson.  Deputy Adam Linn and Captain James Leavens called her cell phone, but she would either hang up or yell profanities.  On one call, Thorkelson said, "I'm gonna

shoot anyone that comes up to me.  Stay away from me.  I got a rifle.  I'm gonna shoot you."  (Doc. 60-19 at 2).  When Thorkelson stopped answering her phone, Linn used a PA speaker to continue communicating with her, trying to convince her to put the gun down and come outside.

Meanwhile, Nader took position in a nearby second-story apartment with a full view of Thorkelson's porch.  The owner of the apartment told deputies he saw Thorkelson pump her weapon as if it was a bb gun.  Casale—armed with an MP5—moved into a carport near Nader, where he also had a clear view of Thorkelson's porch about 70 feet away.  Nader saw Thorkelson stick a gun barrel through the blinds, but he could not distinguish it as a rifle or bb gun.  After examining the gun through his scope, Nader radioed, "I still can't confirm it's a real gun, I…it almost looks like a bb gun to me."  (Doc. 60-23).  Casale likewise could not tell what kind of weapon Thorkelson had.

During the standoff, Thorkelson's husband called 911 and told the operator his wife had a bb gun, not a real rifle.  Dispatch relayed the message to the deputies on the scene.  About a minute later, Thorkelson moved the blinds on her sliding glass door, giving Thorkelson a full view of the apartment.  Nader radioed that she had a rifle but did not take aim.  Seconds later, Thorkelson opened the door, walked swiftly onto the porch, and stepped towards Linn—who was using the PA system from Woodby's car—and other nearby deputies.  As she advanced, Thorkelson raised the gun to her shoulder and aimed towards Linn.  Having just used his shoulder radio, Nader had to relocate Thorkelson through his scope.  Just as he started depressing his trigger, Casale fired from the carport.  The bullet hit Thorkelson in the chest, and she fell.  Deputies entered the apartment to

render aid, but Thorkelson had no pulse.  They found a Crosman model 760 Pumpmaster bb gun on the porch railing near Thorkelson's body.

### Legal Standard

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The initial burden falls on the movant, who must identify the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To defeat summary judgment, the non-movant must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material facts exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences drawn from it in the light most favorable to the non-movant.  *See Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006).  In the context of a qualified immunity analysis, once a court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*,…the reasonableness of [the officer's] actions…is a pure question of law." *Penley v. Eslinger*, 605 F.3d 843, 848-49 (11th Cir. 2010) (quoting *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007)).

### Discussion

*A.  Excessive Force*

"Qualified immunity protects government officials from individual liability unless they violate clearly established statutory or constitutional rights of which a reasonable person would have known." *L. T. by Snorton v. Owens*, 808 F. App'x 814, 820 (11th Cir. 2020). An official invoking qualified immunity must first show he was acting within the scope of his discretionary authority. Plaintiff concedes that Casale was acting within his discretionary authority when he shot Thorkelson. The burden thus shifts to Plaintiff to show: (1) Casale violated a federal statutory or constitutional right, and (2) the unlawfulness of Casale's conduct was clearly established at the time of the alleged violation. *Id.* at 820-21.

Plaintiff claims Casale used excessive force in violation of the Fourth Amendment by fatally shooting Thorkelson. Courts measure such claims under an objective reasonableness standard. *Patel v. City of Madison, Ala.*, 959 F.3d 1330, 1338-39 (11th Cir. 2020). A use of force is not excessive if "the officer's conduct is objectively reasonable in light of the facts confronting him." *Mann v. Joseph*, 805 F. App'x 779, 783 (11th Cir. 2020). While there are no rigid preconditions to the use of force, three main factors guide the analysis: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to officers or others; and (3) whether she actively resisted arrest. *Snorton*, 808 F. App'x at 821. The first and third factors are not helpful here. The officers did not suspect Thorkelson of committing a crime and were not trying to arrest her. This case hinges on the second factor.

The Court considers Casale's conduct "'from the perspective of a reasonable officer on the scene' and without regard to his 'underlying intent or motivation.'" *Snorton*, 808 F. App'x at 821 (quoting *Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir.

2004)).  "[O]fficers face situations that are often 'tense, uncertain, and rapidly evolving, thereby requiring split-second judgments as to how much force is necessary.  Because an officer's perspective in the field differs from that of a judge sitting peacefully in chambers, [the Court] must resist the temptation to judge an officer's actions with the 20/20 vision of hindsight."  *Id.* (quoting *Garczynski v. Bradshaw*, 573 F.3d 1158, 1167 (11th Cir. 2009)).

Though the result was tragic, Casale did not use excessive force when he fatally shot Thorkelson.  Casale had conflicting information on the lethality of Thorkelson's weapon.  On one hand, Casale knew that Thorkelson's husband told a 911 operator it was a bb gun, and a witness told officers he saw Thorkelson pump the weapon like a bb gun.  On the other hand, Thorkelson described the weapon as "a gun" and "a rifle," and she repeatedly threatened to shoot and kill officers on the scene.  At Casale's instruction, Nader tried to identify the weapon through his scope but could not do so.  When Thorkelson strode outside, shouldered her weapon, and took aim at officers from an elevated position, Casale could have reasonably believed the officers were in mortal danger.  The law did not require him to give Thorkelson the benefit of the doubt and hope for the best.

Even if Casale did use excessive force, he is entitled to qualified immunity because Plaintiff failed to show that the unlawfulness of his conduct was clearly established at the time of the shooting.  Unless an officer's conduct was "so far beyond the hazy border between excessive and acceptable force that the official had to know he was violating the Constitution[,]" a plaintiff must produce precedential case law developed in such a concrete factual context as to make it obvious to all reasonable government actors that

the conduct violates federal law. *Snorton*, 808 F. App'x at 825 (quoting *Morton v. Kirkwood*, 707 F.3d 1276, 1282 (11th Cir. 2013)). Plaintiff points to *Mercado v. City of Orlando*, 407 F.3d 1152 (11th Cir. 2005) but makes no attempt to explain why *Mercado* is controlling. Even a cursory review of the case reveals important differences. Mercado was crying on his kitchen floor and holding a knife to his chest when an officer shot him in the head with a "less lethal" projectile at close range, causing permanent brain injuries. *Mercado*, 407 F.3d at 1155. Mercado made no threatening moves towards the police or anyone else, and the officer did not give him time to drop the knife before shooting him. *Id* at 1554. In contrast, Thorkelson brandished her weapon for well over an hour, refusing officers' demands to put it down and come talk to them, she threatened the lives of the officers during the standoff, and she was making a threatening move at the moment Casale shot her. *Mercado* does not clearly establish that Casale violated federal law.

Considering the facts in a light most favorable to Plaintiff, Casale is entitled to qualified immunity and thus summary judgment on Count 3.

### B. Battery

In Florida, the ordinarily protected use of force by a police officer is transformed into battery when the force is clearly excessive. *Jean-Baptiste v. Jones*, 424 F. Supp. 3d 1251, 1263 (S.D. Fla. 2019). "An officer is immune from an excessive use of force claim when he 'reasonably believes the force to be necessary to defend himself or another from bodily harm while making the arrest.'" *Haberski v. Bufano*, 728 F. App'x 903, 909 (11th Cir. 2018) (quoting *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. Dist. Ct. App. 1996)). Florida's "clearly excessive" standard is equivalent to the Fourth Amendment analysis. *See Sullivan v. City of Pembroke Pines*, 161 F. App'x 906, 911 (11th Cir. 2006) ("For the

same reasons we concluded that the force used by [the officer] was not clearly excessive under the laws of this Circuit, we also conclude that it was not clearly excessive according to the similar standard set forth under Florida law.").  Thus, for the reasons stated in the previous section, Defendants are entitled to summary judgment on Counts 1 and 2.

*C.  Negligence*

Count 4 is a vicarious liability claim against Sheriff Marceno based on negligence. Plaintiff alleges Casale breached a duty owed to Thorkelson by "unreasonably firing his firearm at THORKELSON and by unreasonably firing his firearm when it was apparent no crime was being committed or life being threatened."  (Doc. 7 at 11).

"Florida law does not permit a cause of action for 'negligent use of excessive force.'"  *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1263 (11th Cir. 2001); *see also City of Miami v. Sanders*, 672 So. 2d 46, 47-48 (Fla. Dist. Ct. App. 1996) ("[I]t is not possible to have a cause of action for 'negligent' use of excessive force because there is no such thing as the 'negligent' commission of an 'intentional' tort.").  Florida does allow negligence claims asserted alongside excessive force claims, but only if the negligence component "pertain[s] to something other than the actual application of force[.]"  *Id.* at 48.

The language of Count 4 makes clear it is an impermissible "negligent use of excessive force" claim.  Plaintiff tries to save Count 4 by recasting it as a claim for "negligent handling of a firearm and negligent decision to utilize the firearm."  (Doc. 66 at 20).  But that does not jive with the allegations in the Complaint, and Plaintiff identifies no evidence that Casale negligently handled or used his gun.  In fact, it is undisputed that Casale *intentionally* shot Thorkelson.  Count 4 fails.

Accordingly, it is now

**ORDERED:**

Defendants Carmine Marceno and Robert Casale's Motion for Summary Judgment (Doc. 60) is **GRANTED**.  The Clerk is **DIRECTED** to enter judgment, terminate all pending motions and deadlines, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida this 31st day of July, 2020.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record